[687 NYS2d 478]

In the Matter of BROOKLYN UNION GAS COMPANY, Petitioner, v COMMISSIONER OF TAXATION AND FINANCE, et al., Respondents.

Third Department, April 1, 1999

**APPEARANCES OF COUNSEL**

*Steven L. Zelkowitz,* New York City (*Carolyn Joy Lee* of *Robert & Holland* of counsel), and *Cullen & Dykeman,* New York City, for petitioner.

*Eliot Spitzer, Attorney General,* Albany (*Gina M. Ciccone* of counsel), for Commissioner of Taxation and Finance, respondent.

**OPINION OF THE COURT**

GRAFFEO, J.

With the enactment of a gas import tax in 1991, gas utilities began remitting to New York import tax revenues collected from certain consumers. The amounts collected in connection with the gas import tax were not, however, deemed corporate receipts for the purpose of determining the utility's gross receipts tax assessment. At issue in this proceeding is whether the enactment of the gas import tax shifted the legal incidence of the gross receipts tax to customers, with petitioner acting as a collection agent for the State, thereby also making the pass through of gross receipts tax recoupment to gas consumers deductible in the calculation of petitioner's gross earnings.

In reliance on this purported shift in the legal incidence of the gross receipts tax, petitioner seeks a $7,588,858 partial refund of its gross receipts tax payments imposed under Tax Law article 9. The Division of Taxation and Finance denied petitioner's request for a refund on the basis that the deduction sought by petitioner was not allowable under Tax Law article 9 since, by statutory construction, gross receipts taxes are not taxes imposed upon customers and, therefore, remain includable in the corporation's gross earnings. Petitioner's challenge to the denial of the refund was rejected by an Administrative Law Judge whose determination was upheld by respondent Tax Appeals Tribunal on administrative appeal. Petitioner now seeks to annul the denial of the refund.

As a public utility involved in the sale of natural gas to residential and commercial customers in Kings, Queens and

Richmond Counties in New York State, petitioner's rates and charges are subject to the jurisdiction of the New York Public Service Commission (hereinafter PSC). Furthermore, as a corporation engaged in the business of supplying gas through pipes or mains, petitioner is liable for the payment of State corporate taxes under Tax Law article 9, which imposes gross receipts taxes (see, Tax Law §§ 186, 186-a) and related surcharges (see, Tax Law §§ 186-b, 186-c, 188) on petitioner's gas sales within New York.[1] The gross receipts tax is computed by applying a statutorily prescribed tax rate percentum to the corporation's "gross earnings" derived from all sources in the State.[2] Petitioner's PSC tariffs have permitted the utility to pass through its gross receipts tax assessment in its rate charged to customers, similar to the recoupment of its other operating costs. Pursuant to Tax Law § 186-a (6), "[t]he tax imposed by this section shall be charged against and be paid by the utility and shall not be added as a separate item to bills rendered by the utility to customers or others but shall constitute a part of the operating costs of such utility". Instead of a separately billed item charged to customers, petitioner recovers, among other costs, its gross receipts tax assessment through a revenue tax surcharge, which is an element of its PSC tariff.[3] The amounts collected from the surcharge are subject to gross receipts taxation since the moneys are includable in the gross earnings of the utility in accordance with Tax Law § 186. To avoid the economic consequences of a "tax-on-a-tax", the PSC allows reimbursement at a rate higher than the actual aggregate tax liability imposed under Tax Law article 9.

Specifically, for the tax years at issue in this proceeding, the aggregate statutory rate for gross receipts taxes imposed on petitioner was 5.61%, but the higher or "grossed-up" surcharge rate charged to its customers was 5.94%.[4] Hence, there was a 0.33% differential between the tax liability owed the State and the tariff surcharge approved by the PSC. From August 1991

---

1. The gross receipts taxes and surcharges contained in article 9 of the Tax Law also apply to water-works, electric, steam heating, and power and light companies.

2. Tax Law § 186 (1) defines "gross earnings" as "all receipts from the employment of capital without any deduction".

3. Petitioner's revenue tax surcharge, as approved by the PSC, is set forth in General Information Leaf Nos. 12-F and G, issued pursuant to an order of the PSC dated July 23, 1991 in case No. 27611.

4. The revenue tax surcharge is based on the formula $E=T/1-T$, with "T" being the applicable statutory tax rate and "E" the applicable percentage factor, resulting in a net cost to consumers of 5.9434%.

through December 31, 1993, petitioner acquired $2,411,296,957 in "gross earnings" for gross receipts tax purposes. This figure represented $2,276,023,198 from gas sales and $135,273,759 from its revenue tax surcharge receipts (the 5.94% "grossed-up" rate). Petitioner now seeks a refund from its gross receipts tax assessment in the amount of $7,588,858, the equivalent of the 0.33% differential,[5] contending that it is entitled to deduct the "gross-up" from its taxable receipts since, as a matter of law, the legal incidence of the gross receipts tax shifted to consumers after adoption of the gas import tax.

Petitioner carries the burden of establishing that its interpretation of the pertinent statutory provisions is the only reasonable interpretation (*see, Matter of Felmont Oil Corp. v Tax Appeals Tribunal*, 235 AD2d 184, *appeal dismissed* 91 NY2d 921, *lv denied* 92 NY2d 807; *cf., Matter of Muraskin v Tax Appeals Tribunal*, 213 AD2d 91, 94, *lv denied* 87 NY2d 806) and that the determination of the Tribunal was arbitrary and capricious (*see generally, Matter of Schwartz v Tax Appeals Tribunal*, 228 AD2d 828, *lv denied* 88 NY2d 816). Our review of the record reveals that petitioner has not sustained its burden to prove that the enactment of the gas import tax requires this Court to shift the legal incidence of the gross receipts tax from gas utilities to customers.

In order to fully comprehend petitioner's contentions, it is necessary to examine the nature of the gas import tax, a tax entirely distinct from the gross receipts tax. Apparently concerned that certain gas consumers were avoiding imposition of the gross receipts tax by purchasing natural gas from outside New York State and arranging for its transportation into the State, the Legislature responded in 1991 by enacting a *new* tax, commonly known as the "gas import tax" (L 1991, ch 166, §§ 146, 147, 148, 149, 149-a, 149-b). As codified in Tax Law § 189, the gas import tax is imposed on natural gas importers for the privilege of importing gas, purchased outside the State, into New York for use and consumption (*see*, Tax Law § 189 [2] [a]).

Petitioner asserts that it was the intention of the Legislature to equalize the tax burden on gas customers, regardless of

---

**5.** The actual calculation is:

$135,273,759
5.94% grossed-up rate charged to customers
-127,684,901
5.61% aggregate tax rate
$ 7,588,858=
0.33% differential

whether gas was purchased from within or outside New York, and that in order to achieve this purpose the Legislature set the gas import tax at a percentage similar to the aggregate gross receipts tax rate and mandated that the gross receipts tax be passed through to consumers, thereby shifting the legal incidence of the tax from the utilities to consumers. We disagree with petitioner's interpretation of the legislative intent underlying chapter 166 of the Laws of 1991 and find two distinct collection mechanisms in the operation of the taxes at issue. The express legislative intent embodied in section 149 of chapter 166 contradicts petitioner's posture through its unequivocal direction that the legal incidence of the gross receipts tax is to remain with utilities. "Provided, further, that the main goal of this act is to attempt to equalize the tax burden in relation to consumers of gas service. Presently, consumers of gas services may avoid the burden of the taxes imposed by sections 186 and 186-a of the tax law by purchasing the service out-of-state and hiring transportation to carry that service to the consumer's premises in this state. *The legal incidence of the taxes imposed by sections 186 and 186-a of the tax law are on the utility making sales of gas services in this state.* However, both of these taxes are presently passed through by the utility separately, and in their entirety, to consumers purchasing gas services from such utility in this state pursuant to rate regulation of the charge for such services by the public service commission. Thus, consumers of gas services purchased in this state from utilities bear the direct pass-through of both such taxes. Sections one hundred forty-six through one hundred forty-nine-a of this act are an attempt to impose on those consumers who purchase gas services outside this state a comparable fair tax burden. Accordingly, to insure continuing comparability, pursuant to regulation by the public service commission, utilities shall be required to continue to pass through the total amount of such taxes to in-state consumers so that such consumers will continue to bear the economic burden of such taxes. In this manner a continuing comparable economic burden is imposed by such sections of this act on these consumers who purchase gas service out-of-state for use or consumption in this state as compared to consumers who purchase gas services in this state from utilities." (L 1991, ch 166, § 149 [emphasis supplied].)

Although the Legislature sought to create a comparable tax burden for gas consumers escaping the gross receipts tax, whether intentionally or unintentionally, it did not create an

identical tax structure. In contrast to the statutory directive that the gross receipts tax be imposed on utilities (see, Tax Law §§ 186, 186-a), the gas import tax was crafted with the legal incidence of the tax on gas importers (see, Tax Law § 189 [2] [a]). The term "gas importer" is defined as a "person who imports or causes to be imported into this state gas services which have been purchased outside the state for its own use or consumption in this state" (Tax Law § 189 [1] [b]). Specifically excluded is "a public utility subject to the jurisdiction of the public service commission as to the matter of rates on sales to customers" (Tax Law § 189 [1] [b]). Hence, the express legislative intent and plain language employed in chapter 166 of the Laws of 1991 point to the inescapable conclusion that petitioner does not bear the legal incidence of the gas import tax.

However, the statutory construct of the gas import tax does require petitioner to collect the monthly tax from gas importers, with the amount of the tax owed to be separately stated and charged on monthly invoices (see, Tax Law § 189 [3] [a] [1]). Therefore, the utility operates as the collection agent for the State in a manner analogous to sales tax collection. Further proof that the Legislature characterized the role of the utility as an agent of collection is apparent from the provision making it the responsibility of the utility to collect the gas import tax, "as trustee for and on account of the state" (Tax Law § 189 [3] [a] [1]). Since the legal incidence of the gas import tax falls on the gas importer rather than the utility, State tax regulations allow petitioner to exclude gas import tax collections from corporate taxable receipts when calculating the amount of gross receipts taxes owed (see, Taxpayer Services Bureau Memorandum 91 [5] C) and therefore, no "gross-up" applies. Notably, there is no reference to the utility acting as a "trustee" for collection purposes in the substantive provisions of the gross receipts tax statutes (see, Tax Law §§ 186, 186-a). Apparently the Legislature determined that it did not intend to hold gas consumers liable for nonpayment of the utility's gross receipts taxes.

Despite the fact that elimination of the "grossed-up" rate for gross receipts taxes may be advantageous to consumers, neither the legislative intent nor the statutory language of Tax Law article 9 supports petitioner's supposition that the Legislature mandated a shift in the legal incidence of the gross receipts tax to gas consumers with the passage of the gas import tax, but for some unexplained reason failed to adopt the necessary sales tax-like statutory amendments. Unquestion-

ably, the Legislature could have recast the gross receipts tax statutes to parallel the operation and method of collection of the gas import tax if it sought to modify the legal incidence of the gross receipts tax. However, chapter 166 of the Laws of 1991 did not alter a single provision of the gross receipts tax or surcharge statutes; essentially only new sections were added to article 9 creating the gas import tax (*see generally*, McKinney's Cons Laws of NY, Book 1, Statutes § 76, at 168).

In light of the unambiguous nature of the statutes at issue with respect to the legal incidence of the two taxes (*see generally*, McKinney's Cons Laws of NY, Book 1, Statutes § 75, at 159), we need not engage in extensive discussion of the Federal precedent offered by petitioner. We are unpersuaded that the rationale expressed in *United States v State of Del.* (958 F2d 555) requires adjustment of the legal incidence of the gross receipts tax in New York. In that case, the tax statute governing the Delaware gross receipts tax on electricity mandatorily imposed a pass through of the tax to customers, resulting in the legal incidence of the tax falling on customers, including a United States Air Force base. The Delaware utility tax was held to be unconstitutional as it applied to the sale of electricity to the Federal Government in violation of intergovernmental tax immunity.

In contrast, while the economic burden of the gross receipts tax and gas import tax falls on the consumer, New York's gross receipts tax statutes explicitly impose the legal incidence of the gross receipts tax on utilities (*see,* Tax Law §§ 186, 186-a) and the PSC's approval of the pass-through surcharge is merely permissible. This statutory specificity also renders petitioner's reliance on *California Bd. of Equalization v Chemehuevi Tribe* (474 US 9) as misplaced. In that case, the regulation dealing with California's tax on cigarettes failed to state what entity bore the legal incidence of the tax, resulting in the United States Supreme Court determining that the legal incidence of the tax fell on non-Indian consumers at tribal smoke shops since the vendors were entities on whom the State could not impose a collection duty. The *Chemehuevi* case does not dictate the outcome sought by petitioner; New York's gross receipts tax statutes do not neglect to identify the entity bearing the legal incidence of the tax.

Finally, petitioner has no standing to assert that the gas import tax will be rendered unconstitutional as violative of the Commerce Clause of the US Constitution if the Tribunal's determination is upheld. Petitioner's claim for a partial refund of

its gross receipts tax does not properly place the constitutionality of the gas import tax before this Court (*see generally*, *Matter of Bray Terms. v New York State Tax Appeals Tribunal*, 248 AD2d 832, *lv denied* 92 NY2d 806; *Matter of Eaton Assocs. v Egan*, 142 AD2d 330, 334-335).

Based on the foregoing, and giving due deference to the interpretation of a tax statute by the Tribunal to the extent that such matters lie within its expertise (*see*, *Matter of Muraskin v Tax Appeals Tribunal*, 213 AD2d 91, 94, *supra*; *Matter of Mattone v State of N. Y. Dept. of Taxation & Fin.*, 144 AD2d 150, 152), we conclude that the determination of the Tribunal to deny petitioner a refund was not arbitrary and capricious nor an abuse of discretion (*see*, *Matter of W. T. Wang, Inc. v State of New York, State Tax Commn., Dept. of Taxation & Fin.*, 113 AD2d 189, 191), and therefore, we confirm the Tribunal's determination.

CARDONA, P. J., MIKOLL, YESAWICH JR. and CARPINELLO, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.