■ In the Matter of SUMITOMO TRUST AND BANKING COMPANY (U.S.A.), Petitioner, v COMMISSIONER OF TAXATION AND FINANCE et al., Respondents. [720 NYS2d 251] —Rose, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal, which denied petitioner's request for a refund of franchise taxes imposed under Tax Law article 32.

The sole issue in this proceeding is whether portions of the interest income attributable to certain loan pool certificates (hereinafter certificates)[1] guaranteed by the United States Small Business Administration (hereinafter SBA) are deductible on the 1989-1991 Tax Law article 32 tax returns filed by petitioner, a New York chartered trust company primarily engaged in commercial banking. The Division of Taxation and Finance disallowed the income deductions claimed by petitioner. Following petitioner's administrative appeal, respondent Tax Appeals Tribunal affirmed the Administrative Law Judge's determination sustaining a notice of deficiency on the ground that the certificates failed to qualify as obligations of the United States for purposes of the 22½% deduction provided for in Tax Law § 1453 (e) (12).[2]

---

1. Pursuant to the United States Small Business Administration Secondary Market Program Guide Glossary, a "Pool Certificate" is "the document received by the registered holder which represents a beneficial interest in a pool consisting solely of the [Small Business Administration] guaranteed portions of loans." As related on page 10 of the Guide, the loan pooling program involved here operates as follows: "the pool assembler collects loans to be placed in the pool. Once this process is complete, the assembler submits a pool application form * * * to the [Fiscal and Transfer Agent (hereinafter FTA)], along with the required supporting documentation. Once the FTA has ascertained that the supporting documentation is correct and that the pool meets the requirements as to the minimum number of guaranteed portions, minimum aggregate dollar amount of a pool, minimum certificate size, and maximum permitted variation in note interest rates and terms to maturity, the FTA will issue the certificates representing interest(s) in the pool, in the amounts requested by the pool assembler. The FTA will issue the certificates within forty-eight hours of settlement."

2. Tax Law § 1453 (e) (12) provides:

"There shall be allowed as a deduction in determining entire net income, to

Petitioner contends that the Tribunal erred in concluding that the certificates are not primary obligations of the United States under the rationale utilized in *Rockford Life Ins. Co. v Illinois Dept. of Revenue* (482 US 182) because the SBA and its Fiscal and Transfer Agent (hereinafter FTA) are the sole signatories to the certificates, certificate holders have no right to recover payments from the borrowers and the certificates unconditionally obligate the SBA to make payments to certificate holders on the 25th day of each month regardless of whether payments were made by the borrowers on the underlying loans. Respondent Commissioner of Taxation and Finance (hereinafter respondent) counters that the certificates were issued as the result of the sale of the lenders' interests in the guaranteed portions of the pool loans to secondary market investors such as petitioner and were not an exercise of the borrowing power of the United States. Respondent maintains that while the United States' role as guarantor enhanced the marketability of the certificates, it is not a primary obligor, and interest income received is not deductible under the rationale in *Rockford Life Ins. Co. v Illinois Dept. of Revenue* (*supra*) because the SBA's promise to pay is indirect, contingent and unliquidated.

"The burden of proof to overcome tax assessments rests upon the taxpayer * * * If there are any facts or reasonable inferences from the facts to sustain it, the court must confirm the * * * determination. Thus, a determination of the [Tribunal] will not be disturbed by the courts unless shown to be erroneous, arbitrary or capricious" (*Matter of Grace v New York State Tax Commn.*, 37 NY2d 193, 195-196, *lv denied* 37 NY2d 708 [citations omitted]; *see, Matter of Brooklyn Union Gas Co. v Commissioner of Taxation & Fin.*, 255 AD2d 80, 83). As there is no dispute that the US Supreme Court's decision in *Rockford Life Ins. Co. v Illinois Dept. of Revenue* (*supra*) governs determination of the instant proceeding, we also acknowledge its admonition that "[a] court must proceed carefully when asked

the extent not deductible in determining federal taxable income: * * *

"twenty-two and one-half percent of interest income on obligations of New York state, or of any political subdivision thereof, or of the United States, other than obligations held for resale in connection with regular trading activities."

The regulations provide as follows: "The term obligation refers to obligations incurred in the exercise of the borrowing power of New York State or any of its political subdivisions or of the United States. This term does not refer to a guarantee of the debt of a third party" (20 NYCRR 18-2.4 [b] [12]).

*to recognize an exemption from state taxation that Congress has not clearly established" (id.,* 191 [emphasis added]). Moreover, "[a]n exemption from taxation 'must clearly appear, and the party claiming it must be able to point to some provision of law plainly giving the exemption' \* \* \* Indeed, if a statute or regulation authorizing an exemption is found, it will be 'construed against the taxpayer', although the interpretation should not be so narrow and literal as to defeat its settled purpose" (*Matter of Grace v New York State Tax Commn., supra,* at 196, quoting *People ex rel. Savings Bank v Coleman,* 135 NY 231, 234 [citations omitted]).

The Federal statute upon which petitioner relies, in pertinent part, provides as follows: "Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax" (31 USC § 3124 [a]). The issue in *Rockford Life Ins. Co. v Illinois Dept. of Revenue* (482 US 182, *supra*) was whether income from Ginnie Maes, securities issued by private financial institutions possessing a pool of Federally guaranteed mortgages, is subject to State taxation. The US Supreme Court held that because the government was only the guarantor of the securities, not the primary obligor, the securities were not "obligations of the United States Government" within the meaning of the statute and, thus, not exempt from the taxing power of the States (*id.,* at 188-189). In its analysis, the US Supreme Court cited these four characteristics of obligations of the United States that are exempt from State taxation: " '(1) written documents, (2) the bearing of interest, (3) a binding promise by the United States to pay specified sums at specified dates and (4) specific Congressional authorization, which also pledged the full faith and credit of the United States in support of the. promise to pay' " (*id.,* at 189-190, quoting *Smith v Davis,* 323 US 111, 114-115). The third factor was found lacking in *Rockford Life Ins. Co. v Illinois Dept. of Revenue* (*supra,* at 190), and we find a similar deficiency in this case.

The most significant similarity between the instruments considered in *Rockford Life Ins. Co. v Illinois Dept. of Revenue* (*supra*) and the certificates here is that the binding promise by the United States government is not a fixed and certain obligation, but a secondary and contingent one. The original lenders continue to service the pool loans and, on the last business day

of each month, are required to forward to the FTA the pro rata share of the principal and interest due and paid by the borrowers. The FTA then remits the payments to the certificate holders on the 25th of each following month regardless of whether payments were received from the lenders. The SBA guaranteed to make principal and interest payments to certificate holders in the event the borrower fails to make payments or the lender failed to forward payments to the agent. This guarantee is a secondary obligation, contingent and uncertain, that does not support petitioner's claim to a tax deduction. The factual differences noted by petitioner between the certificates here and the instruments in *Rockford Life Ins. Co. v Illinois Dept. of Revenue (supra)* are not material to the determination of whether the SBA is a primary obligor. It is also significant that none of the proceeds of the certificates was received by the Federal government and, thus, petitioner has not established that denial of the sought-after deduction would impose a burden on the borrowing power of the United States *(see, NACCO Indus. v Tracy,* 79 Ohio St 3d 314, 319, 681 NE2d 900, 904).

Finding the Revenue Rulings and other authorities upon which petitioner relies to be distinguishable and, in any event, insufficient to establish that the certificates constitute an obligation of the United States, we further conclude that petitioner has failed to meet its burden of demonstrating that the Division's decision and the Tribunal's affirmance thereof were arbitrary, capricious or erroneous as a matter of law *(see, Matter of Brooklyn Union Gas Co. v Commissioner of Taxation & Fin.,* 255 AD2d 80, *supra*).

Cardona, P. J., Mercure, Crew III and Peters, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.