OPINION OF THE COURT
 

 Wesley, J.
 

 When Congress passed the Natural Gas Policy Act of 1978
 
 (see,
 
 15 USC § 3301
 
 et seq.),
 
 it set in motion the deregulation of the natural gas industry. At that time, interstate pipeline companies enjoyed market control of prices as they provided the only means for the sale and distribution of gas from the wellhead to local distribution companies (regulated utilities in New York).
 
 [1]
 
 In 1992, the Federal Energy Regulatory Commission (FERC) completed the transition when it ordered all interstate pipelines to “unbundle” their transportation services from their gas sales (FERC Order No. 636, 57 Fed Reg 13267). The pipelines became common carriers of natural gas
 
 (see, e.g., Matter of Texas E. Transmission Corp. v Tax Appeals Tribunal,
 
 95 NY2d 323, 325-329). Large industrial buyers could now buy natural gas directly from suppliers, bypassing local utilities. The gas is delivered by pipeline, or more commonly, by a New York gas utility. Pursuant to FERC-approved tariffs, the cost of the transport paid by the user is separate from the purchase price of the gas.
 

 Allowing industrial end users to bypass local utilities and purchase gas outside the State created a tax problem for New York. The State’s system of natural gas taxation was developed prior to deregulation and focused on utilities and other entities that sold gas within New York. Section 186 of the Tax Law imposes a corporate franchise tax on any corporation, joint stock company or association “formed for or principally engaged in the business of supplying water, steam or gas, when delivered through mains or pipes” (Tax Law § 186 [1]). The tax (.75%) is assessed against “gross earnings from all sources
 
 *128
 
 within this state”
 
 (id.).
 
 In addition, Tax Law § 186-a imposes a tax (3.5%) on the gross income or gross operating income of gas sellers for gas sales for “ultimate consumption or use” in New York (Tax Law § 186-a [1], [2] [c], [d]). Although utilities are prohibited from identifying taxes assessed pursuant to section 186-a on a customer’s bill
 
 (see,
 
 Tax Law § 186-a [6]), both taxes are passed through to gas customers by the utility’s gross receipts tax assessment in its rate charged to customers pursuant to its Public Service Commission tariff
 
 (see, Matter of Brooklyn Union Gas Co. v Commissioner of Taxation & Fin.,
 
 255 AD2d 80, 82;
 
 see also,
 
 L 1991, ch 166, § 149). Deregulation allowed end users to avoid the “pass-through” taxes by buying gas from out-of-State producers.
 

 In an attempt to recapture those taxes and to “equalize” the tax burden on all gas consumers, the Legislature enacted the Natural Gas Import Tax (L 1991, ch 166, §§ 147-149). The tax (4.25% of the price paid) is imposed “on the privilege or act of importing gas services [gas provided through pipes or mains] or causing gas services to be imported into this state for [the importer’s] own use or consumption in this state” (Tax Law § 189 [2] [a]).
 
 [2]
 
 At the time the Legislature enacted section 189, it took note that the taxes imposed by sections 186 and 186-a are passed on to consumers; that the legislation required the Public Service Commission to continue the pass-through; and that section 189 was “an attempt to impose on those consumers who purchase gas services outside this state a comparable fair tax burden” (L 1991, ch 166, § 149).
 
 [3]
 

 Tennessee Gas is a natural gas pipeline company that acts primarily as a transporter of natural gas. Its pipeline originates in Texas and Louisiana and runs through New York into New England. Tennessee is regulated by FERC and operates under a FERC tariff. Tennessee has a number of pumping facilities along its pipeline that increase the pressure in the line. Ten of these facilities are located in New York. The compressors are
 
 *129
 
 powered by natural gas (compressor fuel) that is drawn off the line. Pursuant to Tennessee’s tariff, ownership of the compressor gas passes at the point where the gas enters Tennessee’s pipeline outside New York. Tennessee is therefore a “gas importer” under Tax Law § 189.
 

 Although Tennessee filed reports with FERC for the period November 30, 1991 through November 30, 1996, it did not pay any section 189 tax on compressor fuel consumed in New York. The State Tax Department audited Tennessee’s FERC filings and determined that Tennessee owed $1.6 million in section 189 taxes, plus interest and penalties. Following an exchange of letters between Tennessee and the Department, and prior to any proceedings before the Tax Tribunal, Tennessee commenced this declaratory judgment action challenging its status as a gas importer under the statute and the facial constitutionality of section 189. Each side moved for summary judgment. Supreme Court dismissed Tennessee’s complaint for failure to exhaust its administrative remedies and characterized Tennessee’s challenge to the statute as based on its specific application to Tennessee’s New York activities. Tennessee appealed.
 

 The Appellate Division noted that the purpose of the statute is to equalize the tax burdens of natural gas consumers in New York. It agreed with Supreme Court that Tennessee’s challenge was actually directed at the statute’s application to Tennessee’s activities in New York and that a facial challenge to the statute was not merited. Tennessee again appealed, and we now reverse and declare the statute unconstitutional on its face.
 

 Tennessee argues, and the Attorney General concedes, that the import tax discriminates against interstate commerce.
 
 [4]
 
 The statute provides differential treatment of in-State and out-of-State economic interests that benefit the former and burden
 
 *130
 
 the latter
 
 (see, Oregon Waste Sys. v Department of Envtl. Quality,
 
 511 US 93, 99); it imposes a tax on the ouUof-State purchase of gas consumed in New York while not taxing instate purchases of gas used in New York. State laws that discriminate against interstate commerce on their face are “virtually
 
 per se
 
 invalid”
 
 (id.).
 

 Where a tax is facially discriminatory it may survive Commerce Clause scrutiny if the State can show that the tax “advances a legitimate local purpose that cannot adequately be served by reasonable nondiscriminatory alternatives”
 
 (id.,
 
 at 101;
 
 see also, City of New York v State of New York,
 
 94 NY2d 577, 596-597). The State contends that the import tax survives Tennessee’s Commerce Clause challenge because the tax complements the taxes imposed under sections 186 and 186-a.
 

 Certain “complementary” or “compensatory” taxes may satisfy Commerce Clause scrutiny even though they discriminate against interstate commerce
 
 (Oregon Waste, supra,
 
 at 102). A valid complementary tax must satisfy three criteria. First, it must identify the intrastate tax burden for which it attempts to compensate. Second, the interstate tax must “roughly approximate,” but not exceed, the amount of the tax on intrastate commerce. Third, the events on which both taxes are imposed must be “ ‘substantially equivalent;’ that is they must be sufficiently similar in substance to serve as mutually exclusive ‘proxies]’ for each other”
 
 (Oregon Waste, supra,
 
 at 103 [quoting
 
 Armco Inc. v Hardesty,
 
 467 US 638, 643];
 
 see also, Homier Distrib. Co. v City of Albany,
 
 90 NY2d 153, 163). As United States Supreme Court Justice Cardozo noted, under a truly compensatory tax scheme “the stranger from afar is subject to no greater burdens as a consequence of ownership than the dweller within the gates. The one pays upon one activity or incident, and the other upon another, but the sum is the same when the reckoning is closed”
 
 (Henneford v Silas Mason Co.,
 
 300 US 577, 584).
 

 Tennessee concedes that the Legislature’s stated intent in enacting Tax Law § 189 was to level the tax field for gas consumers in New York regardless of the location of their gas source. However, Tennessee vigorously contests that section 189 is in fact a valid compensatory tax.
 

 If the import tax roughly approximates, but does not exceed, the amount of the tax on intrastate commerce, it passes the second prong of the compensatory tax test
 
 (see, Oregon Waste, supra,
 
 at 103). Here, the tax rates imposed on consumers who
 
 *131
 
 purchase
 
 gas
 
 in-State are the same as those who purchase gas elsewhere — the sum of the in-State tax rates equals the import tax rate. Tennessee argues, however, that the taxes are not “imposed” on consumers of natural gas in both instances and, thus, the resulting taxes cannot roughly approximate each other. The import tax is directly assessed on the importer/ consumer, and the in-State tax is imposed on the utility or seller, which then passes those taxes through to the consumer. The State argues that, therefore, economic incidence of the tax is the same. Tennessee cautions that this type of “economic incidence analysis” will draw the Court into the thicket of analyzing and comparing different markets to determine if the tax burden imposed on interstate activity roughly approximates, but does not exceed, the intrastate tax burden
 
 (see, Fulton Corp. v Faulkner,
 
 516 US 325, 336-338).
 

 There is no doubt that the taxes in question here are imposed, in fact, on the
 
 same
 
 activity — the use of natural gas in New York. Significantly, the Legislature noted (and mandated the Public Service Commission to continue) the “pass-through” practice of utilities with regard to sections 186 and 186-a taxes when it enacted the import tax (L 1991, ch 166, § 149).
 
 [5]
 
 The taxes paid by the utilities are based, in part, on revenues derived from gas sales. The tax therefore reflects the “cost” of gas purchased in New York by utility customers. Moreover, because the in-State taxes are imposed on a receipt tax basis (including transportation costs charged to utility customers for delivering the gas in-State along with income from any other source), the taxes imposed under sections 186 and 186-a will never be less than the import tax on comparable volumes of gas.
 

 The practical effect of the statutes is the same — consumers carry the tax burden for the use of natural gas in New York. Thus, we need not engage in the difficult quantitative assessment of the extent to which a discriminatory tax supports inState economic activity — which may be highly speculative — in order to reach our decision.
 

 Tennessee also notes that not all gas consumers who buy their gas in New York pay the pass-through taxes because some gas suppliers are not regulated by the Public Service Commission and therefore are not required to pass the tax
 
 *132
 
 through to their customers. In support of its contention, Tennessee offered two affidavits from suppliers who are not regulated by the Public Service Commission and a list of unregulated marketers that were certified to sell gas in New York as of March 1999. The Attorney General counters that Tennessee has failed to identify that portion of the gas market served by non-regulated sellers. Indeed, the Attorney General points to Public Service Commission documents that show, for the tax period in question, unregulated sellers served only 4,000 small customers
 
 (see,
 
 New York State Public Service Commission, Department of Public Service, 1995-1996 Annual Report, at 13).
 
 [6]
 
 Tennessee’s submissions do not convince us that sales of gas subject to sections 186 and 186-a pass-through taxes as compared to unregulated sales establish the “ ‘substantial distinctions and real injuries’ ” necessary in a Commerce Clause challenge
 
 (Associated Indus. v Lohman,
 
 511 US 641, 654 [quoting
 
 Gregg Dyeing Co. v Query,
 
 286 US 472, 481]). The Supreme Court has never “deemed a hypothetical possibility of favoritism to constitute discrimination that transgresses constitutional commands”
 
 (Associated Indus., supra,
 
 at 654).
 

 The third element of a valid compensatory tax is that the events on which the taxes are imposed must be “ ‘substantially equivalent;’ * * * they must be sufficiently similar in substance to serve as mutually exclusive ‘proxies]’ for each other”
 
 (Oregon Waste, supra,
 
 511 US, at 103 [citation omitted]). Tennessee correctly points out that sections 186 and 186-a are franchise taxes. They are imposed on corporations for the privilege of doing business in New York while section 189 is an import tax. Tennessee asserts that the taxing events are so different that they cannot reasonably be seen as taxing similar economic activity. The Attorney General compares the statute to sales and use taxes.
 

 A State can impose a sales tax for sales within the State and a use tax on goods purchased outside the State and consumed within the State provided the use tax does not exceed the sales tax. Although the taxing events are different (purchase or use), they completely cover one area of economic activity — the taxation of all tangible property used or consumed in-State regardless of where the property is acquired
 
 (see, Associated Indus. v
 
 
 *133
 

 Lohman,
 
 511 US 641,
 
 supra; see also, Henneford v Silas Mason Co.,
 
 300 US 577,
 
 supra).
 
 However, the Supreme Court has been cautious to note that its “more recent cases have shown extreme reluctance to recognize new compensatory categories”
 
 (Fulton Corp., supra,
 
 516 US, at 338).
 

 A new category is not required here. As noted earlier, the taxable events are, in fact, the sale of gas in New York and the use of imported gas in New York. Although the in-State taxes are calculated, not by the price paid for the product, but by the gross income/receipts of the seller, they are in essence, taxes from the sales of gas because of the nature of the pass-through. The taxes are also mutually exclusive; the consumer either buys the gas in-State or imports it — the taxes cannot overlap. The State has thus met its burden of establishing that Tax Law § 189 is a valid compensatory tax.
 

 Tennessee’s last challenge to the import tax is premised on “fair apportionment.” The central purpose of fair apportionment “is to ensure that each State taxes only its fair share of an interstate transaction”
 
 (Goldberg v Sweet,
 
 488 US 252, 260-261) and to minimize the likelihood that an interstate transaction will be improperly burdened by multiple taxation
 
 (see, Oklahoma Tax Commn. v Jefferson Lines, supra,
 
 514 US, at 184-185;
 
 Matter of Tamagni v Tax Appeals Tribunal, supra,
 
 91 NY2d, at 541). To determine the threat of malapportionment, the Supreme Court has employed “internal” and “external” consistency tests
 
 (Oklahoma Tax Commn., supra,
 
 at 185).
 

 Tennessee limits its challenge to whether the taxes in question are internally consistent.
 

 “Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce that intrastate commerce would not also bear. This test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate. A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction”
 
 (id.).
 

 Tennessee correctly argues that the taxes in question run afoul of the internal consistency test. If consumers buy gas in a
 
 *134
 
 State with a provision identical to Tax Law § 186, they would pay a pass-through tax even though they exported the gas to New York and consumed it here.
 
 [7]
 
 Becáuse the import tax contains no credit for taxes assessed on the purchase of gas out-of-State, a double tax occurs; the statute crosses over from a permissible exercise of the State’s taxing powers to an unconstitutional burden on interstate commerce.
 

 The State attempts to save the tax by pointing to the enactment language of section 189
 
 (see,
 
 L 1991, ch 166, § 149). In that provision, the Legislature appears to have anticipated the constitutional flaw we now identify. It notes that “if a court of final, competent jurisdiction should adjudge the privilege taxation imposed by this act to be infirm because of the lack of an appropriate credit for tax imposed by another jurisdiction on the sale of the gas service therein then, in such event,
 
 such appropriate credit,
 
 to the extent of the tax imposed by this act, shall be
 
 deemed to be available
 
 in the
 
 manner provided by such court of final,
 
 competent jurisdiction”
 
 (id.
 
 [emphasis added]).
 

 The Attorney General would have us employ the savings language only if Tennessee can establish that it did indeed pay a pass-through tax like that imposed by section 186 in the State where it purchased the compressor gas. But this is a facial challenge: the internal consistency test is measured by hypothetically employing the taxes in question as if they existed in all States; there is no “as applied” escape hatch from the test as the Attorney General seems to argue
 
 (see, Goldberg v Sweet, supra,
 
 488 US, at 261). The savings provision would appear to remedy the flaw in section 189 by providing a credit for any double taxation. However, we find the savings provision invalid here because it requires the Court to define the parameters of the credit and the manner in which it will be implemented. This violates fundamental separation of powers principles. The savings provision would require us to rewrite the statute and create quasi-judicial tax regulations. We are not well suited as an institution for such a task.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and Tax Law §§ 189, 189-a and 189-b declared unconstitutional as violative of the Commerce Clause of the United States Constitution.
 

 
 *135
 
 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Rosenblatt and Graffeo concur.
 

 Order reversed, etc.
 

 [1]
 

 . The
 
 effect
 
 of the deregulation on the structure and organization of the natural gas industry is detailed in
 
 General Motors Corp. v Tracy
 
 (519 US 278, 283-297).
 

 [2]
 

 . If gas is delivered to the importer in New York by a utility, it is required to collect the tax on behalf of the State from the importer based on an “annual average gas price,” and the importer is allowed a quarterly refund to the extent that the amount collected by the utility exceeds the importer’s actual tax liability based on the price paid for the gas (Tax Law § 189 [3] [a]).
 

 [3]
 

 . In 2000, the Legislature phased out Tax Law § 189, gradually decreasing the tax rate to 0% by 2005 and repealing the tax effective January 1, 2005 (L 2000, ch 63, part Y, §§ 6, 6-a, 49 [b]). The rate reduction and repeal of Tax Law § 189 matched the rate reductions resulting from the repeal of Tax Law § 186 and the phase-out of Tax Law § 186-a (L 2000, ch 63, part Y, §§ 3, 4).
 

 [4]
 

 . The Commerce Clause provides that “[t]he Congress shall have Power * ** * [t]o regulate Commerce * * * among the several States” (US Const, art I, § 8, cl [3]). Though phrased as a positive grant of regulatory power to Congress, the United States Supreme Court has long interpreted the Commerce Clause to have a “negative” or “dormant” implication that prevents States from unduly interfering with interstate commerce
 
 (see, Oklahoma Tax Commn. v Jefferson Lines,
 
 514 US 175, 179;
 
 Oregon Waste Sys. v Department of Envtl. Quality,
 
 511 US 93, 98). By our count, this is the fifth time in the last four years we have ruled on a taxing scheme under the Commerce Clause
 
 (Matter of Texas E. Transmission Corp. v Tax Appeals Tribunal,
 
 95 NY2d 323;
 
 City of New York v State of New York,
 
 94 NY2d 577;
 
 Matter of Tamagni v Tax Appeals Tribunal,
 
 91 NY2d 530,
 
 cert denied
 
 525 US 931;
 
 Homier Distrib. Co. v City of Albany,
 
 90 NY2d 153).
 

 [5]
 

 . Our courts have also recognized the use of the revenue tax surcharge as an element of Public Service Commission tariffs (see,
 
 Matter of Brooklyn Union Gas Co., supra,
 
 255 AD2d, at 82).
 

 [6]
 

 . In 1996, there were approximately 4,578,511 gas customers in New York
 
 (see,
 
 Financial Statistics of the Major Investor-Owned Utilities in NYS [The “Five Year Book”], New York State Dept of Pub Svc, 1999, Tables 9C, 60 [also available on-line at <http://www.dps.state.ny.us/welcome99.htm>]). Thus, unregulated sellers served less than .1% of all gas customers statewide.
 

 [7]
 

 . Contrary to Tennessee’s assertion, Tax Law § 186-a applies only to gross income from sales of gas to be used or consumed in New York. Therefore, that provision does not present any internal inconsistency.