Hon. Nathan L. Rudgers Formal Opinion Commissioner No. 2003-F4 Dept. of Agriculture and Markets 1 Winners Circle Albany, New York 12235
Dear Commissioner Rudgers:
You have requested an opinion interpreting Agriculture and Markets Law § 192-g, scheduled to take effect January 1, 2004. This statute provides, in relevant part, that "[n]o person shall import into, or sell, dispense or offer for sale any gasoline which contains methyl tertiary butyl ether." Ag. Markets Law § 192-g(2). You have indicated that entities involved in the gasoline industry have asked whether this statute prohibits the transporting of gasoline containing methyl tertiary butyl ether ("MTBE") through New York from a point outside New York to another point outside the State. We believe that the provision is not intended to apply to the situation where gasoline is being conveyed through New York from and to jurisdictions outside the State, without being offered for sale within New York.[1]
A fundamental rule of statutory construction is that words of ordinary import in a statute are to be given their usual and commonly understood meaning, unless it is clear from the statutory language that a different meaning was intended. See, e.g., In re Drew v. Schenectady Co.,88 N.Y.2d 242, 246 (1996). The word "import" is commonly understood as meaning "to bring or carry in from an outside source, especially to bring in (goods or materials) from a foreign country for trade or sale."American Heritage Dictionary of the English Language, 4th Ed. (2000).
Section 192-g prohibits a person from "import[ing] into, or sell[ing], dispens[ing] or offer[ing] for sale" any gasoline containing MTBE. We believe that the word "import" as used in this provision was intended to have its common meaning. Initially, we note that "import" is not defined in section 192-g or elsewhere in the Agriculture and Markets Law, nor does the statutory language contain any other indication that a different meaning was intended. Furthermore, this interpretation is consistent with the use of the term "import" elsewhere in the statutes governing New York's agricultural industry. These provisions distinguish "importing" products from "transporting" them, see, e.g., Ag. Markets §§ 74 (distinguishing between "importing or bringing into" New York certain animals and transporting them through the State); 95-c (distinguishing between "importing or bringing into" New York and "transporting" within the State horses); or suggest that "importing" into New York includes use in, not just conveyance through, the State, see, e.g., Ag. Markets §§ 117-a (excepting from eligibility for a low-cost spay/neuter program New York residents who own a dog or cat who was "imported" from outside the State); 365 (excepting from the prohibition against clipping the ears of dogs those dogs who are "imported" into the State for breeding purposes). Because section 192-g uses the word "import," rather than, for example, "transport through," we believe that the section was not intended to apply to the conveyance of MTBE-containing gasoline through New York from and to points outside the State.
In addition, we have found no evidence in the legislative history to section 192-g that the Legislature intended to regulate the conveyance of gasoline through New York. See Sponsor's Mem., Bill Jacket, L. 2000, ch. 35, at 6 ("This legislation will protect New York State's water resources. . . ."); Oxygenated Fuels Ass'n, Inc. v. Pataki,158 F. Supp.2d 248, 252 (N.D.N.Y. 2001) ("The legislative history of the N.Y. MTBE Law establishes that its purpose is to protect New York's groundwater from contamination, and this is not seriously contested by plaintiff.").[2]
For the reasons discussed above, we are of the opinion that section192-g of the Agriculture and Markets Law does not prohibit the transporting of gasoline containing MTBE from a point outside New York, through the State, to a point outside it.
Very truly yours,
ELIOT SPITZER, Attorney General
[1] This opinion is limited to the application of section 192-g. It does not address the liability of any person under common law or any other statute, such as, for example, the Navigation Law, which governs liability for discharges of petroleum into the environment.
[2] Moreover, inferring an intent to limit the transporting of gasoline containing MTBE through New York from and to points outside of the State might draw into question the constitutionality of the statute. See,e.g., Tennessee Gas Pipeline Co. v. Urbach, 96 N.Y.2d 124, 130 (2001) (United States Supreme Court has interpreted the Commerce Clause as having "dormant" implication that prevents States from unduly interfering with interstate commerce); Kinley Corp. v. Iowa Util. Board, 999 F.2d 354
(8th Cir. 1993) (discussing Pipeline Safety Act, 49 U.S.C. § 60101 etseq., in context of federal preemption of state legislation); JerseyCentral Power Light Co. v. Township of Lacey, 772 F.2d 1103 (3d Cir. 1985) (discussing Hazardous Materials Transportation Act,49 U.S.C. § 5101 et seq., in context of federal preemption of local legislation); see also Lavalle v. Hayden, 98 N.Y.2d 155, 161 (2002) (legislative enactments enjoy strong presumption of constitutionality; construction of statute should avoid, if possible, interpreting presumptively valid statute in manner that will needlessly render it unconstitutional).