HAMILTON, Circuit Judge,
concurring in the judgment.
I agree with my colleagues that the district court’s grant of summary judgment for the defendant should be affirmed, but with respect, I reach that conclusion by a different route. In rejecting plaintiffs’ preemption and dormant Commerce Clause theories, my colleagues apply a quasi-legislative form of interest-balancing. In my view of the applicable law, the Twenty-first Amendment to the Constitution should foreclose those balancing tests when the state is exercising its core Twenty-first Amendment power to regulate the transportation and importation of alcoholic beverages for consumption in the state. The challenged state law here, forbidding some but not all direct deliveries of alcohol by common carriers to consumers, falls within that core power. The law should be upheld even if, as I believe, its actual benefits are minimal and its burdens on federal interests are significant.
In recent years, the Supreme Court has held that the Twenty-first Amendment did not protect many state alcoholic beverage laws challenged on a host of federal law grounds. See Arnold’s Wines, Inc. v. Boyle, 571 F.3d 185, 192-201 (2d Cir.2009) (Calabresi, J., concurring) (reviewing Twenty-first Amendment cases and describing Supreme Court’s recent “vector” toward prohibiting any state alcoholic beverage laws from discriminating against interstate commerce); Bridenbaugh v. Freeman-Wilson, 227 F.3d 848, 851-53 (7th Cir.2000) (reviewing constitutional history of alcoholic beverage law). By applying the balancing tests to this Indiana law, however, my colleagues go farther than the Supreme Court has gone. My col *463 leagues in the end also uphold the challenged law, but I believe the use of these balancing tests will tend to erode the states’ powers protected by the Twenty-first Amendment.
I. Preemption and the Twenty-first Amendment
Turning first to plaintiffs’ preemption argument under the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. §§ 14501(c)(1), 41713(b)(4)(A), the Twenty-first Amendment provides the only viable distinction between this case and the Maine statute barring direct delivery of tobacco that was struck down as preempted by the FAAAA in Rowe v. New Hampshire Motor Transport Ass’n, 552 U.S. 364, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008). The Twenty-first Amendment distinction should be decisive.
When the United States decided to end Prohibition in 1933, it did so through the compromise set forth in the Twenty-first Amendment. Section 1 repealed the Eighteenth Amendment. Section 2 was the other half of the compromise, providing unique constitutional protection for state laws regulating alcoholic beverages: “The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.”
In our federal system, which is otherwise dominated by the Supremacy Clause in Article VI of the Constitution, the language in section 2 of the Twenty-first Amendment has the unique effect of elevating the covered state laws and regulations to the status of federal constitutional law. Congress could not, for example, pass a law requiring states to allow direct delivery of interstate wine shipments to consumers, even though Congress would be free to impose such a requirement for virtually any other article of commerce. See, e.g., Granholm v. Heald, 544 U.S. 460, 488-89, 125 S.Ct. 1885, 161 L.Ed.2d 796 (2005) (noting that states may ban import of alcohol altogether, or “funnel sales through the three-tier system”). Where section 2 applies, ordinary preemption doctrines under the Supremacy Clause simply do not apply.[1]
*464 When federal courts deal with a state law exercising the state’s core Twenty-first Amendment power over transportation, importation, and sale of alcoholic beverages, including the terms of delivery, federal law requires great deference to the state law, even if the state uses that authority in ways that seem protective or benighted as a matter of sound public policy. See North Dakota v. United States, 495 U.S. 423, 439-40, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990) (plurality opinion) (“But when the Court is asked to set aside a regulation at the core of the State’s powers under the Twenty-first Amendment ... it must proceed with particular care.”). In North Dakota, the state enacted labeling and reporting requirements to protect its distribution system from diversion of imported alcohol intended for consumption on federal military bases. The regulations raised costs and even caused several producers to halt shipments to the military bases rather than comply. Id. at 429, 110 S.Ct. 1986. Finding the regulations to be within the state’s core power and directed to the legitimate interest of preventing diversion for unlawful use in the state, and absent a clear statement about preemption from Congress, the plurality allowed the incidental burdens on federal interests — with no inquiry into their precise scope other than a conclusion that there was no evidence of a substantial burden. Id. at 440, 443-44, 110 S.Ct. 1986.
My colleagues and I agree that the Indiana law preventing retailers from using common carriers for direct delivery of wine to consumers is an exercise of the state’s core Twenty-first Amendment power. We differ in our attempts to discern from the Supreme Court’s few hints how this sort of preemption challenge to a state’s exercise of its core Twenty-first Amendment power should be handled.
One hint appears in Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984), where the Supreme Court held that a state’s prohibition on national cable television advertisements for alcoholic beverages was preempted by federal law on telecommunications. In any context not subject to the Twenty-first Amendment, there would have been no doubt that the state law was preempted. Because of the Twenty-first Amendment, however, the Court proceeded more cautiously. Yet the Court took pains to explain that the state law in question was not an exercise of the state’s core Twenty-fii’st Amendment power: “we have held that when a State has not attempted directly to regulate the sale or use of liquor within its borders — the core § 2 power — a conflicting exercise of federal authority may prevail.” Id. at 713, 104 S.Ct. 2694 (emphasis added). Where the state advertising ban was outside the core power, the Supreme Court applied a balancing test comparable to the one my colleagues apply. Id. at 714-15, 104 S.Ct. 2694. In my view, however, Capital Cities Cable does not offer helpful guidance for dealing with a preemption challenge to a state law that is an exercise of core Twenty-first Amendment power.
More helpful is North Dakota v. United States, discussed above, which held that a state’s exercise of its core Twenty-first Amendment power was not preempted by federal law or intergovernmental immunity. The plurality explained: “But when the Court is asked to set aside a regulation at the core of the State’s powers under the Twenty-first Amendment, as when it is asked to recognize an implied exemption from state taxation, see Rockford Life Ins. *465 Co. v. Illinois Dep’t of Revenue, 482 U.S. 182, 191, 107 S.Ct. 2312, 96 L.Ed.2d 152 (1987), it must proceed with particular care. Capital Cities Cable, 467 U.S. at 714, 104 S.Ct. 2694. Congress has not here spoken with sufficient clarity to preempt North Dakota’s attempt to protect its liquor distribution system.” 495 U.S. at 439-40, 110 S.Ct. 1986. The North Dakota plurality also wrote: “Given the special protection afforded to state liquor control policies by the Twenty-first Amendment, they are supported by a strong presumption of validity and should not be set aside lightly.” Id. at 433, 110 S.Ct. 1986, citing Capital Cities Cable, 467 U.S. at 714, 104 S.Ct. 2694. I agree with my colleagues that a “strong presumption” is not a conclusive presumption, but the Supreme Court itself has never held a state’s exercise of its core Twenty-first Amendment power to be preempted by federal law, nor has it ever subjected such a law to the sort of balancing applied by my colleagues.
North Dakota did not present the more difficult preemption questions that might arise, for example, if Congress acted expressly to preempt state alcoholic beverage laws for powerful federal reasons, despite the strong directive of the Twenty-first Amendment elevating those state laws to the status of federal constitutional commands. In such cases, the difference between a strong presumption and a conclusive presumption might be important. We also do not have such a case here. The “strong presumption” and “clear statement” rule from North Dakota are enough to decide this case without any balancing of interests. The FAAAA did not provide any clear statement of intent to preempt alcoholic beverage laws, and the “strong presumption” should save the Indiana law from preemption without further inquiry into its effectiveness in preventing underage drinking.
In support of their balancing of interests on the preemption issue, my colleagues cite U.S. Airways, Inc., v. O’Donnell, 627 F.3d 1318, 1330 (10th Cir.2010), in which the Tenth Circuit ordered a district court to undertake a balancing of state and federal interests to decide whether New Mexico could enforce its alcoholic beverage laws, including training requirements for crew members, against an airline carrying passengers to and from the state.[2] The Tenth Circuit held first that federal law occupied the field of aviation safety exclusively and then that policies and practices for serving alcohol to passengers are part of that field. The court then turned to the Twenty-first Amendment and held that the district court needed to balance New Mexico’s core Twenty-first Amendment powers and the federal interests underlying the Federal Aviation Act. To support the application of balancing, the Tenth Circuit cited Capital Cities Cable, which addressed and supports balancing only for state alcoholic beverages outside the state’s core powers. See 627 F.3d at 1329, citing Capital Cities Cable, 467 U.S. at 712-14, 104 S.Ct. 2694. The Tenth Circuit’s opinion read too much into Capital Cities Cable and did not apply the “strong presumption” and “clear statement” rule from North Dakota. U.S. Airways therefore provides a pretty thin basis for extending “balancing” to override the constitutional protection that the Twenty-first Amendment gave to a state’s core powers to control transportation and importation of alcoholic beverages for consumption in the state.
*466 Section 2 of the amendment does not include a proviso that it applies only “as long as the state laws are reasonable and do not unduly intrude on substantial federal interests.” That sort of balancing of benefits and burdens can be an imposition in and of itself on the broad regulatory power granted to states within the relatively narrow core of the Twenty-first Amendment. Indiana’s prohibition on some direct deliveries of wine — whether it makes good sense or not, whether it helps prevent underage drinking or not, or whether it is merely a convenient compromise for a highly regulated and politicized industry — is not preempted by the FAAAA because it is an exercise of Indiana’s core power under the Twenty-first Amendment. I would affirm the district court’s judgment on that basis, without trying to balance the state’s interests against the FAAAA’s deregulatory policies for the trucking business.
II. The Dormant Commerce Clause and the Twenty-first Amendment
A. Pike Balancing and the Twenty-first Amendment
“This case pits the twenty-first amendment, which appears in the Constitution, against the ‘dormant commerce clause,’ which does not.” Bridenbaugh, 227 F.3d at 849. A good starting place on the Commerce Clause issue is the text of section 2 of the Twenty-first Amendment: “The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.” That language can be read, and was initially read by the Supreme Court, to immunize from dormant Commerce Clause challenge even state alcohol laws that facially discriminated against interstate commerce. See, e.g., State Bd. of Equalization of California v. Young’s Market Co., 299 U.S. 59, 62-63, 57 S.Ct. 77, 81 L.Ed. 38 (1936); accord, Ziffrin, Inc. v. Reeves, 308 U.S. 132, 138, 60 S.Ct. 163, 84 L.Ed. 128 (1939) (“The Twenty-first Amendment sanctions the right of a state to legislate concerning intoxicating liquors brought from without, unfettered by the Commerce Clause.”).
More recently, however, the Supreme Court has held that the Twenty-first Amendment does not authorize express discrimination between intrastate commerce and interstate commerce. Granholm, 544 U.S. at 485-86, 125 S.Ct. 1885 (abrogating Young’s Market and other cases). The Supreme Court has also held that a state may not use its Twenty-first Amendment powers to regulate commercial transactions with no direct connection to the state, such as through so-called “price affirmation” statutes. See, e.g., Healy v. Beer Institute, Inc., 491 U.S. 324, 109 S.Ct. 2491, 105 L.Ed.2d 275 (1989); Brown-Forman Distillers Corp. v. New York State Liquor Auth., 476 U.S. 573, 106 S.Ct. 2080, 90 L.Ed.2d 552 (1986).
Discriminatory and extraterritorial laws are familiar categories under the dormant Commerce Clause, and such laws rarely survive scrutiny. I agree with my colleagues that the challenged Indiana law does not fit into either category. As my colleagues point out, there is also another body of dormant Commerce Clause law. UndeR the shorthand “Pike balancing,” it applies to state laws that regulate evenhandedly between intrastate and interstate commerce to effectuate legitimate local interests, but which also impose incidental burdens on interstate commerce. In such cases, the Supreme Court has adopted a balancing test. The state law will be upheld “unless the burden imposed on such [interstate] commerce is clearly excessive in relation to the putative local benefits.” Pike v. Bruce Church, Inc., 397 U.S. 137, *467 142, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) (striking down law requiring all cantaloupes in Arizona to be transported in closed containers, which would have required business that used California processing facility to build new facility in Arizona). The Supreme Court, however, has not used Pike balancing to strike down any state alcoholic beverage laws. As I read the Court’s decisions, it also has not signaled that the lower courts should apply Pike balancing to alcoholic beverage laws. We should not extend its use by applying it here.
My colleagues point out that the Supreme Court has mentioned Pike balancing in a couple of alcoholic beverage cases, but a closer look shows that the Court has not endorsed Pike balancing for these cases subject to the Twenty-first Amendment. In Broumr-Forman Distillers, the Court cited Pike in its summary of general Commerce Clause standards, but it never returned to apply Pike. 476 U.S. at 579, 106 S.Ct. 2080. Instead, it struck down the New York price affirmation statute based on its extraterritorial effects. Id. at 583-84, 106 S.Ct. 2080. And in Bacchus Imports, Ltd. v. Dias, 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984), the Court cited Pike only in saying that because the Hawaii statute there discriminated against interstate commerce, the state was not entitled to the more flexible approach of Pike balancing. 468 U.S. at 270, 104 S.Ct. 3049. That passing comment does not amount to even a considered dictum teaching that ordinary Pike balancing should apply when a state is exercising its powers under the Twenty-first Amendment.
Without any Supreme Court use or endorsement of Pike balancing when the Twenty-first Amendment applies, my colleagues cite several cases in which we and other circuits seem to have endorsed Pike balancing in Commerce Clause challenges to alcohol laws. With a closer look, however, we find only the most indirect and meager support, without coming to grips with the states’ Twenty-first Amendment powers, and without recognizing how interest-balancing intrudes upon those powers. What we do not find is a case applying Pike balancing and holding that a nondiscriminatory state alcohol law flunks.
In Baude v. Heath, 538 F.3d 608 (7th Cir.2008), our court accepted the premises of plaintiffs’ legal argument and held that they had not come forward with evidence sufficient to show that the face-to-face requirement for direct wine shipments imposed an excessive burden under Pike. The state itself had urged our court to apply Pike. The Baude panel was not asked and did not consider whether Pike balancing was ever appropriate for alcohol laws in light of the Twenty-First Amendment, which is not mentioned in the opinion.
The Baude panel also invalidated a separate provision that forbade direct shipments by wineries that also had wholesale licenses from other states. Id. at 611-12. The state had not even defended that wholesaler bar, and it was supported by only speculation about benefits. The Baude panel concluded that the wholesaler bar was facially neutral but discriminatory in effect because 93 percent of the nation’s wine production was from states that allowed producers to sell directly to retailers: “The statute is neutral in terms, but in effect it forbids interstate shipments direct to Indiana’s consumers, while allowing intrastate shipments.” Id. at 612. Although that portion of the opinion also cited Pike, the invalidation of the wholesaler bar is better understood as simply an application of Granholm to a state statute that had discriminatoxy effects, not an application of Pike to a statute with only *468 incidental burdens on1 interstate commerce. Given the way the case was argued, the Baude panel’s approach is certainly understandable, and I believe its results were correct. The Baude opinion does not, however, provide a persuasive basis for applying Pike balancing to non-discriminatory state alcohol laws.
In Wine & Spirits Retailers, Inc. v. Rhode Island, 481 F.3d 1 (1st Cir.2007), the First Circuit considered challenges to a host of state alcohol laws. The court briefly mentioned the Twenty-first Amendment, Granholm, Healy, and Pike when it introduced the Commerce Clause standards. 481 F.3d at 10-11. The discussion of Pike held that plaintiffs failed to show excessive burdens without paying any attention to the Twenty-first Amendment. Id. at 15. Without some explanation, that silence does not persuade me that Pike balancing is appropriate when the amendment applies. If that method of analysis were applied more broadly to state alcohol laws, there would be little left of states’ powers under section 2 of the amendment.
Freeman v. Corzine, 629 F.3d 146, 164 (3d Cir.2010), dealt with a number of state alcohol laws. The reference to Pike was only that plaintiffs had not pursued such a theory. That is not an endorsement of Pike balancing when the Twenty-first Amendment applies. And in Black Star Farms LLC v. Oliver, 600 F.3d 1225, 1231 (9th Cir.2010), the only reference to Pike balancing was that the plaintiffs conceded that the challenged laws would survive the test. That is also not an endorsement of Pike balancing.
In Cherry Hill Vineyards, LLC v. Lilly, 553 F.3d 423 (6th Cir.2008), the Sixth Circuit struck down an in-person purchase requirement for wineries shipping directly to customers. (Unlike the Indiana direct-shipment law we upheld in Baude, which allows a buyer to make many purchases after one in-person visit, the Kentucky law required an in-person visit for each purchase.) The plaintiffs pursued a theory of discriminatory effect, and the court agreed. That’s also not Pike balancing, and the court did not try to reconcile Pike with the Twenty-first Amendment.
This track record does not amount to any convincing consensus that Pike balancing is appropriate when the Twenty-first Amendment applies to a law. In light of the extraordinary protection of state alcoholic beverage laws provided by the Twenty-first Amendment and the absence of any use of Pike balancing by the Supreme Court in such cases, we should not subject state defendants to the intrusive and uncertain scrutiny imposed under the Pike test.
B. If Pike Balancing Applies
If a court is going to uphold a challenged law in the end, as my colleagues do, one might ask why the methodology makes a difference. I offer two reasons.
First, litigating a Pike test is quite intrusive. Even in the best of circumstances, Pike balancing puts courts in an uncomfortable and almost legislative role. As Justice Scalia wrote in his concurring opinion in CTS Corp. v. Dynamics Corp. of America, 481 U.S. 69, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987), the Pike “inquiry is ill suited to the judicial function and should be undertaken rarely if at all.” 481 U.S. at 95, 107 S.Ct. 1637. “The judiciary lacks the time and the knowledge to be able to strike a fine balance between the burden that a particular state regulation lays on interstate commerce and the benefit of that regulation to the state’s legitimate interests.” Wiesmueller v. Kosobucki, 571 F.3d 699, 704 (7th Cir.2009). Asking the Pike question — whether a burden on state commerce is clearly excessive in relation to local benefits? — can be a lot like asking *469 whether a blue race-ear is clearly faster than it is blue. In extreme cases, such cross-categorical comparisons can be useful, but Pike balancing invites a wide-open inquiry into competing policy considerations and debates over the efficacy of competing solutions to perceived problems.
The Pike test thus requires a state agency to mobilize personnel, resources, and evidence to justify its policies, and often to do so where good evidence may be hard to come by. Speculation is not enough to show real benefits to weigh against the burdens on Commerce Clause plaintiffs. Raymond Motor Transp., Inc. v. Rice, 434 U.S. 429, 447-48, 98 S.Ct. 787, 54 L.Ed.2d 664 (1978) (finding a dormant Commerce Clause violation where the state offered only speculation and “failed to make even a colorable showing that its regulations contribute to highway safety”); Baude, 538 F.3d at 612 (Pike balancing requires evidence of both benefits and burdens). Getting beyond speculation can be a challenge. It’s one we accept in all other contexts, but section 2 of the Twenty-first Amendment empowers states to act much more freely regarding alcoholic beverages. We should not lightly impose on them the burden of justifying their policies to federal courts.
Second, and more important, whether Pike balancing applies here will be decisive in other cases, and I believe it should actually be decisive in this case. On this point I respectfully disagree with my colleagues. Absent the effects of the Twenty-first Amendment, plaintiffs should have prevailed under Pike. At the very least, given the lopsided presentation of evidence — a good deal by plaintiffs and nothing but speculation from the state — summary judgment for the defense would not be justified under Pike.
Plaintiffs submitted affidavits substantiating the burden imposed on their wine fulfillment business and on wine consumption by the ban on common carrier deliveries of wine club shipments. According to its owners, Cap N’ Cork stands to lose up to $45,000 in profits each year from its wine-club fulfillment business, which it apparently operated throughout Indiana via common carrier in violation of the challenged law before the state took steps to enforce it. That profit corresponds to approximately 13,000 cases of wine worth some $1,500,000 to consumers. Much of this wine was delivered outside of Fort Wayne and originated from some of the thousands of wineries that do not have direct shipment permits or access to a licensed wholesaler. My colleagues argue that these are merely effects on plaintiffs’ preferred method of doing business, not effects on interstate commerce, the latter being of course the only effects that matter under the dormant Commerce Clause.
The same might have been said of the facially-neutral packaging requirement in Pike itself, and that law was struck down. Economies of scale are important in analyzing the burdens of the challenged law. From the evidence submitted, we can infer that delivery of wine on a retail scale by common carriers is much more cost-effective than having a retailer use its own employees and vehicles to make deliveries. Wine retailers are in the business of selling wine, after all, not operating a cost-effective home delivery service. The fact that other retailers in Indiana are not trying to provide local delivery for wine-club fulfillment services tends to confirm the extent of the burden rather than undermine plaintiffs’ theory. My colleagues’ view also overlooks the status of Cap N’ Cork as a participant in a stream of commerce that, but for enforcement of Ind. Code § 7.1-3-15-3(d), allows many small, out-of-state wineries and wine clubs to reach wine drinkers like plaintiffs, who *470 enjoy a much wider variety of wines beyond those carried by the state’s wholesalers.[3]
Looking beyond just these plaintiffs, we see that the wine business in Indiana consists overwhelmingly of out-of-state wine. Indiana’s wine production is relatively small, with just over 1.7 million gallons of wine bottled in 2010. See Alcohol and Tobacco Tax and Trade Bureau, U.S. Dept, of the Treasury, Statistical Report— Wine (2010), available at http://www.ttb. gov/statistics/2010/2010wine.pdf (last visited Jan. 9, 2012). Indiana residents consumed over 9.7 million gallons of wine in 2010. See Beer Institute, Brewers Almanac 2011, available at http://www. beerinstitute.org/statistics.asp?bid=200 (last visited Jan. 9, 2012). Even if Indiana exported no wine at all, over 80 percent of the wine consumed in Indiana must come from outside the state. Yet only 86 of the nearly 6000 out-of-state wineries in the United States have obtained direct shipment permits. See Snow Interrogs. No. 5. Licensed wholesalers in Indiana carry products from just several hundred wineries, among the many thousands available in the wider market.
Plaintiffs buttress their interstate burden argument with citations to the FTC Report mentioned so often in recent wine cases. See Federal Trade Commission, Possible Anticompetitive Barriers to E-Commerce: Wine (2003) at 5-7, 16-19, 22-26, available at http://www.ftc.gov/os/2003/ 07/winereport2.pdf (last visited Jan. 9, 2012). That report suggests that bans on direct shipment dramatically reduce consumer choice, in large part because many wineries have difficulty obtaining distribution through traditional wholesalers and retailers. See, e.g., id. at 24. The facially neutral burdens of obtaining retail distribution in Indiana fall more heavily on wineries from California, Oregon, and Washington than on wineries from Indiana. That does not make the Indiana law discriminatory, but it describes the incidental effects on interstate commerce that invite Pike balancing in other contexts.
Plaintiffs again cite the FTC Report, as well as a report from the National Academies of Science, to suggest that direct shipment via age-verifying common carriers adequately inhibits youth access to wine. See id. at 26-27; Granholm, 544 U.S. at 490, 125 S.Ct. 1885 (considering the FTC findings). There is simply no evidence in the record even suggesting that wine club shipments of high-end wines are a method used by minors seeking to evade age limits.
As I see the case, Indiana’s problem here is that it has chosen to allow some direct deliveries by common carriers to consumers, but not others. The selective approach undermines the state’s rationale for the challenged law. If a consumer has ever visited in person a winery with the proper direct-shipping license for Indiana, so that the winery could confirm the consumer is at least 21 years old, the winery may use a common carrier to make direct deliveries to that consumer. Ind.Code § 7.1-3-26-9(l)(A). The state is satisfied with any adult signature upon delivery; it need not be from the consumer whose age was verified by the winery. But in many other circumstances, such as the wine clubs that plaintiffs seek to join, common carriers may not be used. Ind.Code § 7.1-3-15-3(d). As a result of this inconsistency, it is hard to give much weight to *471 Indiana’s arguments about the salutary purposes served by the challenged law.
My colleagues suggest that section 7.1-3-15-3(d) reasonably blocks wine club deliveries by common carrier because of the lack of face-to-face age verification either by an Indiana retail store employee or in an out-of-state winery. Indiana requires age-verification training for employees of Indiana retailers who may sell wine face-to-face or deliver wine directly to customers. Ind.Code § 7.1-3-1.5-6. Indiana does not (and could not) require such training for the out-of-state winery employees, and does not require it for delivery drivers who are already involved in direct shipments to customers. See Ind.Code §§ 7.1-3-26-9, 7.1-3-18-1 et seq. But defendant’s own evidence showed that 35 percent of (trained) Indiana licensees sold alcohol to underage customers in undercover police tests in 2009. Poindexter Aff. ¶ 15. One might reasonably conclude from that data, and from the absence of any evidence of underage deliveries through high-end wine clubs, that the prohibited common carrier deliveries pose little threat to the state’s legitimate interests. For permitted direct shipments by common carrier, the in-person visit to the winery could have been years ago, adding little or nothing to the state’s confidence level, and the delivery driver needs only an adult signature from someone, not necessarily from the named buyer. If those arrangements are acceptable to the state, it’s hard to see why wine club deliveries by common carrier should not be.
In an attempt to show that the burdens on interstate commerce do not clearly outweigh the state’s interest in preventing underage drinking, the state relies on conclusory affidavits from two of its excise agents asserting that age verification in face-to-face transactions is “one effective barrier to youth access” to alcohol. See Poindexter Aff. ¶ 6. That’s about it for the defense on the merits.
Such speculation should not be enough to meet the state’s burden. Given Indiana’s selective ban on common carrier deliveries, under genuine Pike balancing, Indiana should need some evidence supporting the notion that retailer employees are at least marginally better than common carrier employees at obtaining genuine adult signatures. In other words, the state should need some evidence giving some reason to expect that Cap N’ Cork employees are better at face-to-face age verification than UPS drivers. As plaintiffs point out, there is simply no such evidence in the record. Indiana allows UPS delivery drivers to deliver wine for holders of direct shipment permits, and it requires a face-to-face verification to be performed by those drivers. See Ind.Code §§ 7.1-5-10-23, 7.1-3-26-9(2)(B) & (D), and 7.1-3-26-13. Responding to interrogatories, the state admitted that it had experienced “no difficulties in regulation” and “no complaints” regarding common carriers and direct shipment. Snow Interrogs. No. 9. As far as the stated rationale for the challenged law goes, the law is a solution in search of a problem.[4]
When a regulation burdens interstate commerce only indirectly and incidentally, we do not require states to legislate in the most efficient possible manner. If we are applying genuine Pike balancing, though, there must be at least some sign of incremental benefit from the state regulation. See Pike, 397 U.S. at 142, 90 S.Ct. 844 (“And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.”); *472 see also Raymond Motor Transp., 434 U.S. at 447-48, 98 S.Ct. 787 (state failed to produce evidence that the permitted 55-foot truck trailers were any safer than the prohibited 65-foot trailers). Again, speculation about benefits is not enough to satisfy Pike. Id.; Baude, 538 F.3d at 612. Here the state provided evidence related to the conceded importance of its interest but has left an evidentiary vacuum with regard to the efficacy of section 7.1-3-15-3(d) in service of that interest. In my view, the Twenty-first Amendment is the only rescue for the challenged law, and that’s why the district court was correct to enter judgment for the defendant.
The organization of the alcoholic beverage industry is a product of a legal structure from the earlier age that first adopted Prohibition and then repealed it with the Twenty-first Amendment. What has evolved is a collection of Balkanized state markets and legal systems that regulate an industry with enormous influence over the lawmakers who regulate it. The system can easily devolve into ossified protection of incumbent businesses, as with the protection of the three-tier distribution system — a model that may seem to have less and less value as the internet and e-commerce flatten the global marketplace. Yet the extraordinary constitutional status given to state alcoholic beverage laws in the Twenty-first Amendment was the compromise that allowed the repeal of Prohibition. Rather than asking courts to erode that compromise, those seeking a more progressive organization of the industry should turn to state-by-state political action on behalf of consumers who are hurt by these laws designed primarily to protect incumbents in the industry.

. Nobody suggests that section 2 is truly absolute. One need only hypothesize a state alcoholic beverage law discriminating on the basis of race, sex, or religion to recognize that there are limits. See Craig v. Boren, 429 U.S. 190, 209, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (Equal Protection Clause of Fourteenth Amendment bars different drinking-age limits based on sex). Similarly, the Supreme Court has held that the Twenty-first Amendment does not authorize a state to disregard the First Amendment, 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 516, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (striking down a ban on price advertising for alcoholic beverages), the Due Process Clause, Wisconsin v. Constantineau, 400 U.S. 433, 436, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (requiring notice and opportunity to be heard before police publicly prohibit named individuals from buying alcohol), the Import-Export Clause, Department of Revenue v. James Beam Co., 377 U.S. 341, 346, 84 S.Ct. 1247, 12 L.Ed.2d 362 (1964) (striking down a tax on liquor imported into state from foreign country), or federal antitrust laws exercising the full commerce power of the federal government, California Retail Liquor Dealers Ass’n v. Midcal Aluminum, Inc., 445 U.S. 97, 114, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980) (striking down a resale price maintenance program). These cases do not show that the Twenty-first Amendment can be trumped by just any federal statute. They show, in essence, that a state cannot stretch its core Twenly-first Amendment powers over transportation and importation of alcoholic beverages to nullify federal law’s effects over other aspects of the alcoholic beverage business. See Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 713, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984) (“we have held that when a State has not attempted directly to regulate the sale or use of liquor within its borders — the core § 2 power — a conflicting exercise of federal authority may prevail”). *464 These cases that fence in to some extent the states' powers under the Twenty-first Amendment should not be understood as erasing section 2 of the amendment altogether.

. The case arose after an over-served airline passenger killed himself and five other people as he drove home from the airport.

. Many of the most celebrated wine-makers in California sell primarily to restaurants and their private customer lists, do not operate facilities where in-person age verifications could occur, and rely exclusively on the fulfillment process to reach potential customers in Indiana.

. With regard to the favored deliveries by retailer employees, though, the state has had some difficulty with retailers' "failure to maintain adequate records.” Id. at No. 11.